*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| KATHY SWEET-SPRINGS | : | Civil No. 12-706(FLW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | OPINION |
| DEPARTMENT OF CHILDREN AND FAMILIES, et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Presently before the Court is Defendants Department of Children and Families ("DCF") and Division of Youth and Family Services' ("DYFS") (collectively, "Defendants") motion to dismiss pro se Plaintiff Kathy Sweet-Springs's ("Plaintiff") Second Amended Complaint ("SAC") asserting claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 et seq. Defendants move to dismiss on the basis that (1) Plaintiff's Title VII claim is time-barred and fails to state a claim upon which relief can be granted, and (2) Plaintiff's remaining claims are barred by sovereign immunity and/or fail to state a basis upon which relief can be granted. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

I. **BACKGROUND**

The Court will only recount facts pertinent to this motion, which are taken from Plaintiff's SAC and supporting documents and are assumed to be true for the purpose of this motion to dismiss. Plaintiff Kathy Sweet-Springs was hired by Defendants to be an employee of DYFS, within DCF, in September 2004. SAC, Parties.[1] Plaintiff requested and was placed on paid temporary disability leave beginning in May 2008.[2] Id. Plaintiff contends that during this period, Defendants terminated Plaintiff's employment because of her race and her disabilities in violation of Title VII, the NJLAD, and the ADA.[3] Id. Parties, ¶ 1.

On October 30, 2008, Plaintiff filed a Verified Complaint with the New Jersey Department of Law and Public Safety, Division of Civil Rights ("DCR"), alleging that she had been subject to disciplinary action because of her race and disability, and in November 2008, Plaintiff received a Notice of Dual Filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Philadelphia Area Office. SAC, Exh. A; Compl., p. 7-8.[4] On July 8, 2011, the DCR notified Plaintiff that, based on an investigative report, Plaintiff's case was closed with a finding of "no probable cause." SAC, ¶¶ 7-9; Compl.,

---

[1] Plaintiff's SAC contains some numbered paragraphs, but also reads in portions as a legal brief. The Court will refer to numbered paragraphs or to section headings where applicable.

[2] In the SAC, Plaintiff, apparently mistakenly, states that this disability occurred in 2012. However, review of the underlying EEOC documents reveals that this disability occurred in 2008. See Compl., 10 (Dkt. No. 1). Furthermore, Defendants refer to the 2008 dates in their motion. Ultimately, Plaintiff was discharged in August 2008. Id.

[3] Plaintiff also alleges in this portion of the SAC that Defendants violated the Family Medical Leave Act ("FMLA"), but nowhere else in the SAC or other accompanying filings does Plaintiff meaningfully address the FMLA, let alone cite any relevant statute or case law. As discussed, infra, Footnote 7, even assuming that the citations to FMLA satisfy the most liberal application of Fed. R. Civ. P. 8(a), which it does not, Plaintiff's claim is also barred on sovereign immunity grounds.

[4] Although Plaintiff's first Complaint was dismissed without prejudice, Defendants continue to reference portions of it to develop the underlying factual record. Plaintiff does not dispute any of these facts, which do not contradict facts pled in the SAC.

p. 5-6. Subsequently, the EEOC mailed a Dismissal and Notice of Rights to Plaintiff on November 3, 2011 ("Right–to–Sue Letter"). SAC, Exh. D. The Right–to–Sue Letter advised Plaintiff that the EEOC "adopted the findings of the state or local fair employment practices agency that investigated the charge" – i.e., that DCR finding that there was no probable cause supporting Plaintiff's discrimination claims – and explicitly stated that Plaintiff could continue to pursue the matter only by filing suit against Defendants within 90 days of receipt of the Letter. Id.

On February 3, 2012, Plaintiff filed her first Complaint in this Court asserting a claim under Title VII. Defendants moved to dismiss, claiming that Plaintiff failed to file her Complaint within the 90-day time frame after receiving her Right–to–Sue Letter, as prescribed by 42 U.S.C. § 2000e-5(f)(1), and thus Plaintiff's Complaint was time-barred. On October 16, 2012, the Court found that Plaintiff's Complaint lacked any allegation regarding the date of receipt of the Right–to–Sue Letter, ordered that Plaintiff's Complaint be dismissed without prejudice, and granted Plaintiff leave to file an Amended Complaint within 20 days in which she would plead the date of her receipt of the Right–to–Sue Letter. See Dkt. No. 8. Plaintiff timely filed her First Amended Complaint, but after further review following a motion to dismiss by Defendants, the Court, under Fed. R. Civ. P. 12(e), ordered Plaintiff to file a more definite Second Amended Complaint. See Dkt. No. 12.

Plaintiff filed the SAC on December 19, 2012, in accordance with the Court's Rule 12(e) order, in which Plaintiff realleged her previous Title VII claim and also added claims under the NJLAD and ADA. Defendants filed the instant motion to dismiss, renewing their argument that Plaintiff's Title VII claim should be dismissed on the basis that Plaintiff failed to file her Complaint within the 90-day time frame after receiving her Right–to–Sue Letter. Defendants

also move to dismiss Plaintiff's Title VII and other discrimination claims for failure to state a claim upon which relief can be granted. Subsequent to the filing of Defendants' pending motion to dismiss, on January 29, 2013, Plaintiff filed a letter with the Court captioned "Letter Supporting Case to be Presented to Court," which the Court treats as Plaintiff's opposition to Defendants' motion to dismiss. See Order dated Jan. 31, 2013, Dkt. No. 24.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 (2007). As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 545).

When a plaintiff is proceeding pro se, courts are obligated to construe the complaint liberally. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Nevertheless, a pro se party cannot rely on bald assertions or legal conclusions to survive a motion to dismiss. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citation and quotations omitted).

## III. DISCUSSION

### A. Statute of Limitations

The Court first addresses the threshold issue of whether Plaintiff filed her Complaint within the permitted time period. "Section 2000e-5(f)(1) requires that claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter." Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 173 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)). The Third Circuit has strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed. See Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999); Mosel v. Hills Dept. Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986).

In the instant matter, the record indicates that the Right–to–Sue Letter is dated November 3, 2011. SAC, Exh. D. Plaintiff alleges, however, that she did not receive the letter until two days later, on November 5, 2011. Id. ¶ 6. Based on this date of receipt, Plaintiff contends that she timely commenced the instant lawsuit because her first Complaint was filed on February 2, 2012, 89 days later.

Based on these allegations, which Defendants do not oppose, the Court finds that Plaintiff timely commenced her Title VII claim.[5] See 42 U.S.C. § 2000e-5(f)(1); Mosel v. Hill Dep't Store, Inc., 789 F.2d at 252-53 (ninety-day limitation period commences upon the date of plaintiff's receipt of the Right-to-Sue letter).

---

[5] Plaintiff also points to Fed. R. Civ. P. 6(e), which provides for a presumption that mailed items are received three days after the date of mailing. SAC, ¶ 6. Thus, even in the absence of sufficient evidence to identify the date on which Plaintiff received the letter, the Court will apply a presumption that a party receives a document three days after it was mailed. See Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).

### B. Title VII

Turning to the merits of Plaintiff's action, Plaintiff first contends that Defendants discriminated against her on the basis of her race by terminating Plaintiff's employment following disability leave, under the pretext of unauthorized absences, and that such treatment amounted to a violation of Title VII. SAC, Parties, ¶ 7. The Court finds that Plaintiff's allegations fail to state a claim.

To establish a prima facie case discrimination under Title VII, a plaintiff must allege facts that show, or lead to inferences that would show, that she "(1) is a member of a protected class, (2) was qualified and rejected for the position she sought, and (3) nonmembers of the protected class were treated more favorably." Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 281-82 (3d Cir. 2001); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973). "[O]nly complaints about discrimination prohibited by Title VII – that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 – constitute 'protected activity.' Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." Davis v. City of Newark, 417 F. App'x 201, 203 (3d Cir. 2011) (citations omitted); see Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).

As an initial matter, I must determine the basis for Plaintiff's Title VII claim, as the allegations in the SAC are somewhat unclear. In some portions of the SAC, Plaintiff alleges a cause of action under Title VII based on her race as an African-American See SAC, Jurisdiction and Venue ("This action also arises under the violation of Race of Title VII . . . ."); id. ¶ 2 ("Plaintiff belongs to a protected class, in that, she . . . is Black.") Indeed, this appears to be one

of the bases of discrimination advanced in the administrative proceedings before the DCR.  See id. ¶ 9 ("The Division of Civil Rights investigator continually provided that he could not find sufficient evidence to validate any of Pro Se Plaintiff's employment discrimination claims . . . regarding 'Race.'"); see also SAC, Exh. A (DCR Compl.) (complaining of discrimination based on race).  On the other hand, the majority of the facts and claims in the SAC pertain to alleged employment discrimination, and resulting termination, on the basis of Plaintiff's disability.  See SAC, Jurisdiction and Venue ("This action arises under the American with Disabilities Act [*sic*] for unlawful termination of an employee while disabled . . . ." (Emphasis added.)); id. Parties ("After the State approved temporary disability . . . the State then fired me for being out sick . . . [in] violation of . . . Title VII of the Civil Rights Act." (Emphasis added.)); id. ¶ 1 ("The State fired Pro Se Plaintiff due to disabilities and failed to provide accommodations for disabilities . . . ." (Emphasis added.)); cf. id. ¶ 7 ("Plaintiff was unlawfully and wrongfully terminated under the pre-text of unauthorized absences. . . . The State intended not to provide training to Pro Se Plaintiff due to the request for accommodations . . . .").

In light of these ambiguities, Defendants argue that Plaintiff's SAC can only be interpreted as stating a claim for discrimination based on Plaintiff's disabilities, not her race.  See Def. Mot., 14 ("Plaintiff therefore does not allege that her termination was based on her race."). Plaintiff's opposition does not meaningfully address this argument.  Nevertheless, the Court determines that the SAC contains an allegation of discrimination under Title VII based on Plaintiff's race.  See Abramson v. William Paterson Coll. of New Jersey, 260 F.3d at 281-82.  Indeed, Plaintiff has pursued such a claim since her initial filing with the DCR.  See SAC, Exh. A (DCR Compl.).

7

Plaintiff, however, has not adequately alleged that her termination, or any other adverse employment action, was the result of her race, and thus has not sufficiently alleged facts that would lead to a finding of a prima facie violation of Title VII. Specifically, Plaintiff has not alleged any connection between her race and an act that would violate Title VII. The Third Circuit has explained that the "central focus of the prima facie [Title VII] case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (emphasis added; internal quotation marks omitted). Thus, to establish a prima facie case, an individual must allege some "causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotation marks omitted); see also Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 366 order clarified, 543 F.3d 178 (3d Cir. 2008) ("The evidence most often used to establish this nexus is that of disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class.").

Here, Plaintiff's SAC is devoid of any allegation that shows, or would lead to an inference, that Defendants terminated Plaintiff based on her race. Indeed, as discussed above, the crux of Plaintiff's claims in this case is that the adverse employment action – her termination – occurred because of her disability, not because of her race. E.g., SAC, ¶ 1 ("The State fired Pro Se Plaintiff due to disabilities and failed to provide accommodations for disabilities . . . ." (Emphasis added.)). Plaintiff's other references to discrimination based on her race – e.g., that Plaintiff's supervisor made comments about Plaintiff's race and stared at her – do not include any other factual context or support and thus are too vague to show the requisite nexus to an adverse employment action under Title VII. See Sarullo, 352 F.3d at 798 (dismissing claim of

8

racial discrimination under Title VII for failure to show causal nexus when only evidence was plaintiff's assertion of not being rehired based on race); Baig v. Nuclear Regulator Comm'n, Civ. No. 10-0842, 2011 WL 2214660, at *4 (D.N.J. June 6, 2011) ("Although Plaintiff need not provide the precise kind of disparate treatment to establish a claim of discrimination, he must 'establish some causal nexus between [his] membership in a protected class and the [alleged discriminatory action].'" (Quoting McDonnell Douglas Corp. v. Green, 411 U.S. at 802)). Plaintiff has failed to adequately state a claim of race discrimination.[6] Furthermore, to the extent that Plaintiff is alleging a violation of Title VII based on her disability, as the SAC also could be interpreted, that claim fails because Title VII does not provide a cause of action for employment discrimination on the basis of disability. 42 U.S.C. § 2000e-2; Davis v. City of Newark, 417 F. App'x at 203 ("[O]nly complaints about discrimination prohibited by Title VII – that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 – constitute 'protected activity.'"). Accordingly, Plaintiff's Title VII claim is dismissed.

### C. Other Discrimination Claims

In the remaining allegations in the SAC, Plaintiff contends that Defendants discriminated against Plaintiff on the basis of her disability in violation of the NJLAD, N.J.S.A. 10:5-1 et seq.,

---

[6] Due to the unclear nature of Plaintiff's SAC, it may be that Plaintiff is also asserting a claim of retaliation based on what appears to be additional complaints about disparate treatment. See, e.g., SAC, ¶ 7 ("The State . . . refused to allow Pro Se Plaintiff to remain gainfully employed due to Pro Se Plaintiff's refusal to drop lawsuit [*sic*]."). Such a claim, however, fails for the same reasons – Plaintiff does not allege a nexus between any protected activity based on her race and her termination. See Sarullo v. U.S. Postal Serv., 352 F.3d at 800 ("A plaintiff alleging that an unfavorable job action is based upon an illegal retaliatory motive in violation of Title VII must first establish that (1) he was engaged in protected activity; (2) he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." (Internal quotation marks omitted)).

and the ADA, 42 U.S.C. § 12101 et seq.[7] SAC, Jurisdiction and Venue, Parties, ¶ 1. Defendants move to dismiss the claims brought under the NJLAD and the ADA, relying on sovereign immunity.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment precludes federal jurisdiction over a state absent the state's consent to suit. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. Id. at 101-102; Alabama v. Pugh, 438 U.S. 781 (1978). In Fitchik v. New Jersey Transit Rail Operations, Inc., the Third Circuit explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d Cir. 1989). In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." Davis v. Lakewood, No. 03–1025, 2005 WL 1863665, at *3 (D.N.J. Aug.4, 2005) (citing Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001)).

Here, the named Defendants are DCF and DYFS. Courts in this district have long held that DCF and DYFS are, "beyond dispute," arms of the state for sovereign immunity purposes.

---

[7] As discussed, supra, Footnote 3, Plaintiff also references the FMLA, but does not set forth the basis for such a claim. In any event, it appears that Plaintiff's FMLA claims similarly would be barred on sovereign immunity grounds. See Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 229 (3d Cir. 2000) (holding that FMLA does not abrogate sovereign immunity); Hughes v. State of New Jersey, Office of Pub. Defender/Dep't of Pub. Advocate, No. 11-01442, 2012 WL 761997, at *5 (D.N.J. Mar. 7, 2012) ("Plaintiff's self-care claims [under the FMLA] against the State of New Jersey and the Office of the Public Defender are barred by the Eleventh Amendment.").

E.g., Simmerman v. Corino, 804 F. Supp. 644, 650 (D.N.J. 1992); Pena v. Div. of Child & Family Servs., No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010). Thus, it is clear that, notwithstanding Plaintiff's pleadings,[8] the State of New Jersey is the real party-in-interest in this matter.

However, "[a] State's immunity from suit is not absolute." Lombardo v. Pennsylvania, 540 F.3d 190, 195 (3d Cir. 2008). "[T]here are only three narrowly circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. 2003) (citing MCI Telecomms. Corp. v. Bell Atlantic-Pennsylvania Serv., 271 F.3d 491, 503 (3d Cir. 2001), cert. denied, 537 U.S. 941 (2002). Because Plaintiff is seeking only money damages against her employer, see SAC, Claims for Relief, and not prospective relief against any individual, I focus only on the first two exceptions to Eleventh Amendment immunity for Plaintiff's NJLAD and ADA claims.

With respect to Plaintiff's NJLAD claim, Plaintiff has pointed to no Congressional Act abrogating New Jersey's immunity with respect to the NJLAD, and this Court can find none. Similarly, "[t]he State [of New Jersey] has not explicitly waived Eleventh Amendment immunity for claims brought in federal court under the NJLAD." Bennett v. City of Atl. City, 288 F. Supp. 2d 675, 683 (D.N.J. 2003) (citing N.J.S.A. § 10:5–12(a)); Mitchell v. New Jersey Lottery, No. 04-896, 2006 WL 1344092, at *10 (D.N.J. May 15, 2006) (same). Because "New Jersey has not

---

[8] Sovereign immunity applies even if the state is not a named party to the action, "'as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d at 659. Thus, Plaintiff cannot evade or circumvent Defendants' assertion of sovereign immunity by omitting the State as a formal party to her SAC. Chisolm v. McManimon, 275 F.3d at 322-23.

stated 'by the most express language' that it is open to private suits under the NJLAD in federal court," this Court lacks subject matter jurisdiction over Plaintiff's NJLAD claim. Garcia v. Richard Stockton Coll., 210 F. Supp. 2d 545, 550 (D.N.J. 2002).

Sovereign immunity also bars Plaintiff's claims under the ADA. In alleging discrimination in violation of the ADA, Plaintiff avers that her action "arises under the American[s] with Disabilities Act for employment discrimination based upon Physical and Mental Handicap and in violation [*sic*] for failure to provide accommodations for said disabilities." SAC, Jurisdiction and Venue; id., ¶ 5 ("Pro Se Plaintiff was immediately denied accommodations and fired while disabled . . . and receiving temporary disability payments while out disabled."). Although Plaintiff does not further explain the nature of her ADA claim, or under which portion of the ADA she brings her claim, it appears that Plaintiff's cause of action arises under Title I of the ADA.[9]

"[Title I of] [t]he ADA prohibits certain employers, including the States, from discriminat[ing] against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment." Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 177 (3d Cir. 2002) (alterations in original; internal quotation marks omitted). It is without dispute, however, that "the Eleventh Amendment

---

[9] Alternatively, Defendants have suggested that Plaintiff's ADA claim arises under Title V for retaliation based on her disability. See Hughes v. State of New Jersey, Office of Pub. Defender/Dep't of Pub. Advocate, 2012 WL 761997, at *4 ("Retaliation under the ADA falls under Title V . . . ."). Several courts have concluded that Title V claims are also barred under sovereign immunity, see id., particularly where the Title V claim is predicated on a Title I claim, Demshki v. Monteith, 255 F.3d 986, 988-89 (9th Cir. 2001). As explained above, this appears to be the only other fitting interpretation of Plaintiff's ADA claim in this case. See also infra, Footnote 10. Accordingly, I find that any claim brought under Title V in this case is also barred on the basis of sovereign immunity.

bars suits seeking money damages for state violations of Title I of the ADA. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 551 (3d Cir. 2007)." (citing Board of Trustees of Univ. of Ala. v. Garrett 531 U.S. 356, 368-74 (2001))). Accordingly, I conclude that Plaintiff's ADA claim is barred by sovereign immunity.[10]

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has not alleged sufficient facts in the SAC showing, or giving rise to inferences that show, that she will be able to make a prima facie claim of race discrimination race under Title VII. Therefore, Plaintiff has failed to state a Title VII claim upon which relief can be granted. Furthermore, this Court lacks subject matter jurisdiction over Plaintiff's remaining claims of discrimination under the NJLAD and ADA because those claims are barred by sovereign immunity. Accordingly, Defendants' motion is GRANTED and – because the SAC represents Plaintiff's third attempt at bringing a Title VII claim against Defendants before this Court – DISMISSES the SAC with prejudice.

An order will be entered consistent with this Opinion.

---

[10] In contrast, "Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." United States v. Georgia, 546 U.S. 151, 159 (2006). However, Plaintiff's claim under the ADA is clearly not a claim under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Under that statutory scheme, a plaintiff is required to allege the following elements: (1) she is a qualified individual with a disability within the meaning of the statute; (2) she is being excluded from participation in, or is being denied the benefits of the services, programs, or activities of a covered entity, or is otherwise being discriminated against by the entity; and (3) such exclusion, denial of benefits, or discrimination is due to the plaintiff's disability. Bowers v. National Collegiate Athletic Association, 475 F.3d 524 (3d Cir. 2007). As discussed above, Plaintiff's claim under the ADA concerns her employment discrimination, not exclusion from government services, programs or activities; thus, Plaintiff has not alleged the elements of a prima facie claim under Title II.

Dated: June 17, 2013                                      /s/     Freda L. Wolfson
                                                          Freda L. Wolfson, U.S.D.J.